IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ALLISON L. GRAHAM, | ) | CASE NO. 4:16CV3028 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| PAIR-A-DICE PROPERTIES II, LLC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 18) submitted by Defendant Pair-A-Dice Properties II, LLC ("Pair-A-Dice"). For the reasons discussed below, the Motion will be granted.

## FACTS

Pair-A-Dice submitted a statement of material facts with pinpoint citations to the evidentiary record, in compliance with NECivR 56.1(a). (Defendant's Brief, Filing No. 19 at 1–2.) The Plaintiff Allison L. Graham ("Graham") did not respond. Accordingly, the facts presented by Pair-A-Dice are accepted as true for purposes of the pending Motion. *See* NECivR 56.1(b)(1). The following is a summary of those facts.

Graham was employed by Pair-A-Dice, a Nebraska limited liability company that operated a hotel in York, Nebraska. Throughout Graham's employment, her supervisor was Ryan White ("White"), the Vice President of Operations for Pair-A-Dice, and she reported directly to him. In November 2014, Graham had knee surgery, and White accommodated her requests for time off work. When Graham returned to work on or about November 24, 2014, Graham did not provide White with any request for accommodation or work restrictions, but White allowed her to work from home, and made other accommodations for her health and comfort.

White made a decision to terminate Graham's employment because of performance issues and her negative attitude toward White and co-workers. Graham's employment was terminated on December 2, 2014. White was not aware that Graham had a hearing impairment until after Graham was terminated and she filed a charge of discrimination with the Nebraska Equal Opportunity Commission ("NEOC").

On December 10, 2015, Graham filed a pro se Complaint in the District Court of York County, Nebraska, alleging that she is a person with a disability as defined in the Americans with Disability Act, 42 U.S.C. § 12181 *et seq*. ("ADA"), "to wit: Plaintiff is hearing-impaired." (Complaint, Filing No. 1 at ECF 4 ¶ 4.) She alleged that after November 24, 2014, Pair-A-Dice failed to accommodate her disability by permitting her to work 20 hours per week, instead of full time, as her doctor required, (*id*. at ECF 5 ¶ 6.), and that Pair-A-Dice terminated her employment on or about December 2, 2014, because of her disability. (*Id*. at ECF 5 ¶ 8.)

Graham seeks declaratory and injunctive relief as well as monetary damages and a civil penalty. Pair-A-Dice removed the action to this Court on February 25, 2016; answered the Complaint; and moved for summary judgment.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031,

1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S. Ct. 513 (2011)). In reviewing a motion for summary judgment, the Court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56©, except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id*. at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting Fed. R. Civ. P. 56©).

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (internal quotation marks omitted) (quoting *Torgerson*, 643 F.3d at 1042). "[T]he mere existence of some alleged factual dispute between the parties" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (internal quotation marks omitted) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## DISCUSSION

A plaintiff seeking to recover under the ADA must establish a prima facie case of discrimination, that is: "(1) an ADA-qualifying disability; (2) qualifications to perform the essential functions of her position with or without reasonable accommodation; and (3) an adverse employment action due to her disability." *Norman v. Union Pac. R.R. Co.,* 606 F.3d 455, 459 (8th Cir. 2010) (citing *Finan v. Good Earth Tools, Inc.,* 565 F.3d 1076, 1079 (8th Cir. 2009)). The burden then shifts to the employer to show a nondiscriminatory reason for the adverse action and then back to the plaintiff to show that the articulated reason is merely a pretext for discrimination. *Young v. Warner-Jenkinson Co. Inc.*, 152 F.3d 1018, 1021 (8th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)). "The plaintiff retains at all times the ultimate burden of proving that the adverse employment action was motivated by intentional discrimination." *Id*.

Pair-A-Dice asserts that Graham's claim under the ADA fails because she cannot establish that (1) she is disabled, (2) the decision-maker had knowledge of her disability,

(3) she requested an accommodation for the disability, (4) Pair-A-Dice failed to grant any such accommodation, or (5) the circumstances of her termination suggest a discriminatory motive or evidence of pretext. (Defendant's Brief, Filing No. 19 at 4.)

**A. Disability**

The ADA Amendments Act of 2008 (ADAAA),[1] effective January 1, 2009, amended the ADA with regard to the definition and construction of "disability," broadening the definition and rejecting strict standards the Supreme Court adopted in *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 197 (2002). Congress passed the ADAAA with the explicit purpose of "reinstating a broad scope of protection to be available under the ADA."[2]

The ADAAA addressed the intended scope of the "regarded as" prong of the definition of disability. 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

> [T]he EEOC revised the definition of "substantially limits" to remove the requirement that an impairment "prevent[] or significantly or severely restrict[] the individual from performing a major life activity." [29 C.F.R. Pt. 1630, App'x] § 1630.2(j)(1)(ii). This revision was extended to "regarded as" disabled cases, with the EEOC taking the position that "it is not necessary to determine whether an individual is 'substantially limited' in any major life activity" for "regarded as" disabled cases. *Id*. § 1630.2(j). The EEOC also modified its definition of "major life activity" to include not only physical activity, but certain non-physical activities, and it further directed that "major life activity" should not be "interpreted strictly to create a demanding standard for disability." *Id.* § 1630.2(l).

---

[1] Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (2008).

[2] Pub. L. No. 110–325 § 2(b)(1), 122 Stat 3553 (2008).

*Morriss III v. BNSF Railway Co.*, 817 F.3d 1104, 1110–11 (8th Cir. 2016) (second and third alterations in original).

For purposes of the pending Motion, the Court will assume, without deciding, that Graham at all relevant times had an ADA-qualifying disability, although there is no evidence that her employer knew of any such disability or ever "regarded" her as having such disability. The Court also will assume, without deciding, that Graham at all relevant times was qualified to perform the essential functions of her position, with or without reasonable accommodation.[3]

**B.  Failure to Accommodate**

To succeed in a failure-to-accommodate claim, a plaintiff "must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Service, Inc*., 794 F.3d 899, 905 (8th Cir. 2015),

"To determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.'" *Id.* at 906 (quoting *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009)). "This interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert his employer to the need for an accommodation and provide relevant details of his disability." *Id*. (citing *EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790, 795 (8th Cir. 2007)).

> To show that an employer did not engage in an interactive process, the employee must prove:

---

[3] If an employee's conduct is "erratic, aggressive, and rude in a way that disturb[s] her coworkers and disrupt[s] the workplace" the employee may not be a "qualified individual" under the ADA.  *See Walz v. Ameriprise Financial*, 779 F.3d 842, 845–56 (8th Cir. 2015).

> 1) the employer knew about the employee's disability;
> 2) the employee requested accommodations or assistance for his or her disability;
> 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and
> 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Id.* (citing *Peyton*, 561 F.3d at 902).

The only evidence before the Court regarding Graham's failure-to-accommodate claim is the affidavit of Ryan White ("White Affidavit") (Filing No. 20-3) in which he states:

> When Plaintiff had knee surgery in November of 2014, I accommodated her time off of work to recover even though I was not provided with a Physician's note.  Upon Plaintiff's return to work after her knee surgery on or about Nov. 24, 2014, she did not provide me with any requested accommodations or work restrictions, but I attempted to limit the number of hours she worked upon her return, allowed her to work from home, and encouraged her to take it easy and stay in her office as much as possible.

(*Id.* ¶ 4.)

Graham's failure-to-accommodate claim fails for several reasons.  First, Graham's medical leave and Pair-A-Dice's alleged failure-to-accommodate described in the Complaint have no relation to Graham's alleged ADA-qualifying disability, *i.e*., a hearing impairment.  Second, her Complaint contains a mere "formulaic recitation of the elements of a cause of action" and any claim based on Pair-A-Dice's alleged failure to accommodate is not plausible on the face of the Complaint.  *See C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629–30 (8th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Third, she has not presented a prima facie case of discrimination under the ADA, because she has not presented any evidence suggesting that Pair-A-Dice took adverse action against her based on her alleged disability.  (See

discussion, below.) Fourth, there is no evidence before the Court that Pair-A-Dice failed to provide reasonable accommodations for Graham's convalescence following her knee surgery. Fifth, there is no evidence that Graham *requested* accommodations from Pair-A-Dice, or presented any documentation of medical restrictions that Pair-A-Dice disregarded.

Accordingly, there is no genuine issue of material fact as to Graham's claim of discrimination under the ADA based on Pair-A-Dice's alleged failure to make reasonable accommodations for her alleged disability, and the claim fails as a matter of law.

## C. Discriminatory Motive for Adverse Action

The only evidence of Pair-A-Dice's motive for Graham's termination is the White Affidavit, in which he states: "I made the decision to terminate Plaintiff's employment [due to] ongoing performance issues and Plaintiff's negative attitude toward me and other co-workers." (White Affidavit, Filing No. 20-3 ¶ 6.) "Plaintiff's alleged disability did not play any part in my decision to terminate Plaintiff's employment, and the decision to terminate Plaintiff's employment was not in retaliation for anything Plaintiff told me about how she was being treated by others in the workplace." (*Id*.)

The Eighth Circuit has held that "[a]t a minimum, [a plaintiff] must show that the decisionmakers knew about her alleged disability." *Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 805 (8th Cir. 2014) (citing *Kozisek v. Cnty. of Seward, Neb.*, 539 F.3d 930, 936 (8th Cir. 2008)). "And in the end, even awareness of the [alleged disability], without more, is not enough to maintain [a] claim." *Id.* (citing *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 736 (8th Cir. 2010)).

Here, the undisputed evidence demonstrates that the decision-maker (White) had no knowledge of Graham's alleged ADA-qualifying disability—her alleged hearing impairment, until after the adverse employment action occurred. The undisputed evidence also demonstrates that White took the adverse action for reasons unrelated to Graham's alleged disability. Graham has failed to present any evidence in support of the third prong of a prima facie case of discrimination under the ADA, and her claim fails.

## CONCLUSION

Graham failed to present a prima facie case of discrimination under the ADA, and the Court's inquiry may stop there. It is also noted that Pair-A-Dice presented a non-discriminatory reason for Graham's termination, and Graham did not present any evidence suggesting that Pair-A-Dice's proffered reason for her termination was a pretext for discrimination.

Accordingly,

IT IS ORDERED:

1. Defendant Pair-A-Dice's Motion for Summary Judgment (Filing No. 18) is granted;

2. Plaintiff Alison L. Graham's Complaint (Filing No. 1 at ECF 4–7) is dismissed, with prejudice;

3. The parties will bear their own costs and attorney fees; and

4. A separate Judgment will be entered.

DATED this 8th day of July, 2016.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge